IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-03300-RBJ

ZUBAIR KAZI and KFC of Pueblo, INC,

      Plaintiffs,

v.

KFC US, LLC,

      Defendant.

---

## ORDER ON DEFENDANT'S MOTION TO DISMISS

---

      This matter is before the Court on defendant's motion to dismiss.  ECF No. 18.  For the reasons discussed below, defendant's motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

      The following facts are alleged in the Amended Complaint (ECF No. 17) and are assumed to be true for purposes of the pending motion.  This is a franchise encroachment case.  Plaintiff Zubair Kazi is a president of numerous companies that own and operate franchises across the United States.  These include a KFC location in Pueblo, CO.  ECF No. 17 at ¶1.  Kazi and KFC of Pueblo (collectively "franchisee") have sued defendant KFC US, LLC ("KFC") for licensing another KFC restaurant ("outlet") near franchisee's current location.  *Id.* at 1.

      At some point in the past franchisee and KFC entered into a contract ("Franchise Agreement") by which franchisee would establish a KFC location at 1644 S. Prairie Avenue,

Pueblo. *Id.* at ¶5. The contract gave franchisee a license to prepare fried chicken and other food recipes and to market them with certain trademarks and service marks. *Id.* at ¶7. The parties renewed that contract on June 1, 2017. *Id.* at ¶5; ECF No. 17-1 at 2. The relevant contractual provisions are as follows:

> 3.6     Except as provided in subsection 3.8, during the License Term KFC shall not use or license others to use any of the trademarks licensed hereunder in connection with the sale of any food products at any location within a radius of one and one-half miles of the Outlet, unless [exceptions not relevant here].

* * *

> 19.     Right to Apply for New Franchised Outlets. Before permitting the establishment of any new franchised outlet (defined below) at a location closer to the Outlet than to any other franchised outlet (except pursuant to commitments made before the Effective Date of this Agreement), KFC shall be obligated to give Franchisee 30 days prior written notice of such proposed action. During such 30-day period, Franchisee may apply to KFC for a franchise to operate an outlet at such proposed new location and KFC shall negotiate in good faith with Franchisee regarding said application . . . . As used herein "new franchised outlet" means an outlet not previously in existence, whether franchised or owned by KFC or its affiliates, and which will not be owned by KFC and its affiliates.

* * *

> 20.4    Non-Waiver. No failure, forbearance, neglect or delay of any kind or extent on the part of KFC in connection with the enforcement or exercise of any rights under this Agreement shall affect or diminish KFC's right to strictly enforce and take full benefit of each provision of this Agreement at any time, whether at law for damages, in equity or in injunctive relief of specific performance, or otherwise. No custom, usage, concession or practice with regard to this Agreement, the Franchisee or KFC's other franchisees shall preclude at any time the strict enforcement of this Agreement (upon due notice) in accordance with its literal terms. No waiver by KFC of performance of any provision of this Agreement shall constitute or be implied as a waiver of KFC's right to enforce such provisions at any future time.

> 20.5    Scope of Agreement, Changes, Consents, Etc. This Agreement constitutes the entire understanding and agreement of the parties concerning the Outlet and supersedes all prior and contemporaneous understandings and agreements of the parties, whether oral or written, pertaining to the Outlet, except for any express obligations of the Franchisee under the franchise option agreement for the Outlet and except for any written "master" agreement that may be in force between KFC and the Franchisee. No interpretation,

2

change, termination or waiver of any provision hereof, and no consent or approval hereunder, shall be binding upon the other party or effective unless in writing and signed by Franchisee and KFC's President, Vice President in charge of franchising or franchise services or General Counsel, except that a waiver need be signed only by the party waiving. Nothing in this section 20.5 is intended to disclaim or require Franchisee to waive reliance on any representation that KFC made in the Franchise Disclosure Document that KFC provided to the Franchisee.

ECF No. 17-1 at §§ 3.6, 19, 20.4, 20.5.

At some point after the parties renewed their contract, KFC issued a document entitled "KFC Impact Study Guidelines." ECF No. 17-2 at 2. These guidelines were effective from March 21, 2019 through December 28, 2020. They stated that a franchisee who received notice of a new proposed outlet ("option") under section 19 of the contract, or a franchisee whose location was next-closest to the proposed new outlet and within ten miles, could request an impact study. *Id.* The purpose of the impact study would be to determine the impact the new proposed outlet would have on the existing outlet. *Id.*

The guidelines also included a table that lays out "KFC Action" based on the results of the impact study. *Id.* The relevant part of the table indicated that if the potential impact of the new outlet was less than ten percent, KFC would approve the option. If the potential impact was between ten and fifteen percent, KFC's action was "further review." If the potential impact was above fifteen percent, the option would be denied. *Id.* A footnote also stated that "KFC reserves the right to deny option, regardless of the matrix above, based on other situations and circumstances (for example, including but not limited to: impact on low volume restaurant, cumulative owner impact, cumulative same restaurant impact, cross owner impact, etc.). *Id.*

According to franchisee, the parties "came to know and understand" that the Pueblo market could likely not sustain more than one KFC location because other KFC locations in the

area had become unprofitable and unsustainable in the past.  *Id.* at ¶10.  Franchisee alleges that

its contract with KFC "came to include" these guidelines and that "the Parties came to

understand and agree that they be part of the Agreement."  *Id.* at ¶6.  Defendant disputes this.

ECF No. 18 at 6; ECF No. 22 at 1.  Franchisee alleges that while KFC had discretion regarding

new outlet locations in the Pueblo area, KFC represented to franchisee that it would license new

outlets according to the guidelines and their course of dealing.  ECF No. 17 at ¶9.  Relying on

the contract, the guidelines, and the parties' course of dealing, franchisee invested substantial

time and money into developed his franchise location in Pueblo.  *Id.* at ¶11.

On April 4, 2019 KFC informed franchisee that it was considering establishing a new

KFC location in north Pueblo.  KFC advised franchisee of its rights under section 19 of the

Franchise Agreement to apply to operate the new outlet, to request an impact study, or both.  *Id.*

at ¶12.  On April 12, 2019 franchisee opted not to apply for the right to operate the new outlet.

He made this decision because he was "confident" that a "reasonably and prudently prepared

Impact Study" would show that the potential impact of the new outlet on his own outlet would be

more than fifteen percent.  Instead, per the guidelines franchisee timely submitted a request for

an impact study and the $6000 fee.  *Id.* at ¶13.

KFC commissioned the James Andrews Group ("JAG") consulting firm to conduct the

impact study.  On June 12, 2019 JAG produced a report that said the proposed north Pueblo KFC

location would impact franchisee's south Pueblo KFC location by 13.4 percent.  *Id.* at ¶14.

Franchisee alleges that the JAG study and corresponding survey were "not reasonably and

prudently performed" and were "fundamentally flawed."  *Id.* at ¶15.  In response franchisee

commissioned his own impact study, completed by FTI consulting, which concluded that the

proposed north Pueblo KFC would adversely impact franchisee's south Pueblo location by 33 percent to 36 percent. *Id.* at ¶16.

Franchisee asked KFC not to allow the proposed north Pueblo franchise and licensure to proceed. KFC refused. Franchisee alleges that by the time he filed his amended complaint on February 20, 2020 the new franchisee for that location had obtained a building permit and begun construction. *Id.* at ¶18.

## I. PROCEDURAL BACKGROUND

Franchisee initially filed this case on November 21, 2019. ECF No. 1. He filed an amended complaint on February 20, 2020. ECF No. 17. In his amended complaint franchisee alleged breach of contract, bad faith, promissory estoppel, and unjust enrichment. Franchisee also asked this Court to permanently enjoin KFC from licensing the new outlet and the new franchisee from operating it. *Id.* at ¶¶20–40.

Defendant KFC moved to dismiss this case on March 5, 2020. ECF No. 18. On March 26, 2020 franchisee responded. ECF No. 20. KFC replied on April 9, 2020. ECF No. 22.

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210

(10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *E.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

If the Parties rely on materials found outside the four corners of the complaint, the court has the discretion to convert a motion to dismiss to one for summary judgment. If it does so the Court must inform the parties and permit them to meet all factual allegations with countervailing evidence. Fed. R. Civ. P. 12(d); *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). However, the court may consider evidence beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the plaintiff's claims, referred to in the complaint, and if the parties do not dispute their authenticity. *Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

## IV. ANALYSIS

The parties' contract includes an enforceable choice-of-law provision indicating that "it shall be interpreted in accordance with and governed by the laws of the State of Kentucky and any applicable state franchise laws." ECF No. 17-1 at § 20.8. The parties agree that Kentucky law applies to this case. ECF No. 18 at 2, 3; ECF No. 20 at 6 n.3. I therefore analyze the issues below under Kentucky law.

### A. Express breach of contract

Franchisee brings two claims for breach of contract: breach of an express contract term ("First Claim for Relief") and breach of the covenant of good faith and fair dealing ("Second

Claim for Relief").  I address the first claim here.  I address the second in the next section.

Under Kentucky law, to prove breach of contract a plaintiff must establish the following: "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (citing *Barnett v. Mercy Health Partners–Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007)). To properly plead such a claim "a claimant must identify a 'contractual basis' for the claim, including the specific terms of the contract allegedly breached." *Nationwide Mut. Fire Ins. Co. v. Castle*, No. CIV. 13-25-ART, 2013 WL 5503056, at *3 (E.D. Ky. Oct. 2, 2013) (citing *Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012); *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 402 (6th Cir. 2006)).  "The interpretation and construction of a contract is a question of law for courts to decide." *KFC Corp. v. Kazi*, 29 F. Supp. 3d 945, 950 (W.D. Ky. 2014).

The contract between the parties here is captured in the Franchise Agreement that they renewed in June 2017.  ECF No. 17-1.  Franchisee points to no explicit term or provision in that document that KFC allegedly breach.  ECF No. 17.  Instead, his express breach claim relies on his argument that the "KFC Impact Study Guidelines" were incorporated into the contract and that KFC breached those guidelines.  *Id.* at ¶22.  Franchisee alleges that "[t]he Agreement came to include certain outstanding, written KFC Guidelines."  *Id.* at ¶6.  He goes on to say that "[a]lthough the Guidelines are not specifically referenced or incorporated in the Renewal and Addendum, as alleged more specifically below, the Parties came to understand and agree that they be part of the Agreement."  *Id.*  Franchisee argues, in essence, that the parties mutually agreed to modify the contract with regards to KFC's discretion to open additional outlets more

7

than one and one-half miles from franchisee's location.  ECF No. 20 at 5.

KFC contends that any contract modification franchisee alleges is precluded by the Franchise Agreement provisions on waivers, integration, and modification.  KFC notes that the integration and anti-waiver clauses ensure that the contract "constitutes the entire understanding and agreement of the parties" and that no alleged "custom, usage, concession or practice" shall "preclude at any time the strict enforcement of this Agreement (upon due notice) in accordance with its literal terms."  ECF No. 18 at 6 (citing ECF No. 17-1 at §§ 20.4, 20.5).  KFC also argues that the contract can only be amended by a writing signed by a KFC executive.  *Id.* at 6 n.5.  Finally, KFC asserts that the complaint contains no non-conclusory allegations of mutual assent as required for contract modification.  ECF No. 22 at 1.

Contracts generally cannot be unilaterally modified.  *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 443 (6th Cir. 2007).  It is true, as KFC notes, that in Kentucky "[n]on-waiver clauses are routinely upheld as enforceable."  *KFC Corp. v. Kazi*, No. 3:11-CV-00475-M, 2012 WL 6645701, at *3 (W.D. Ky. Dec. 20, 2012) (internal quotations and citations omitted).  Furthermore "in the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence."  *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and citations omitted).  KFC urges this Court to apply these principles to the contract's non-waiver, integration, and modification clauses.

However, "[a] merger and integration clause does not prohibit the parties from future agreements to modify or even to rescind the contract."  *Energy Home, Div. of S. Energy Homes,*

*Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (internal quotation marks and citations omitted).

The Supreme Court of Kentucky has long recognized

> 'that parties who have the right to make a contract have the power to unmake or modify, regardless of self-imposed limitations; that by subsequent agreement based upon a sufficient consideration parties may modify their contract in any manner they choose; and that generally a new consideration is required in order for an attempted modification for a contract to be valid.'

*Id.* (quoting *Vinaird v. Bodkin's Adm'x*, 72 S.W.2d 707, 711 (Ky. Ct. App. 1934)); *see also*

*GEICO Marine Ins. Co. v. Monette*, 438 F. Supp. 3d 763, 768 (E.D. Ky. 2020) (noting that

contract modifications require mutual assent just like contract formation).  Thus, for the

guidelines to be part of the contract franchisee must allege either that the parties amended the

Franchise Agreement in accordance with its modification clause, or that the parties mutually

assented to modification and provided new consideration.  Neither is the case here.

Franchisee has not provided any facts supporting his argument for modification.  The

guidelines are in writing, but they are not signed by either franchisee or a KFC executive as

required by § 20.4.  They are distinctly less formal than the contract addendum the parties *did*

properly execute when they renewed the Franchise Agreement in June 2017.  *See* ECF No. 17-2

(amending the contract in a document with signatures from franchisee and KFC's Vice President

and General Counsel).  There is no question that the guidelines did not become part of the

contract by amendment in compliance with the contract's own provisions.

Franchisee states in two different sentences that the parties "came to an understanding"

that the guidelines were part of the contract.  But these statements are merely conclusory.  He has

not alleged that the parties negotiated over the guidelines.  Nor has he alleged any facts

suggesting that KFC intended to be legally bound by them as by a contract.  It is unclear from the

complaint who exactly drafted the Guidelines, at what level of the organization they were authorized, or how widely or consistently they were used. At most, the Court could infer that KFC intended to follow the guidelines because it presumably drafted them (they are titled "*KFC Impact Study Guidelines*") and in fact did follow them—at least technically—in this case. But this is insufficient to establish mutual assent.

There is also nothing in the complaint indicating consideration. As written the guidelines say that KFC will undertake an impact study when considering new locations within ten miles of the existing location. This appears to benefit the franchisee but not the franchisor. It effectively operates as a possible extension of the exclusive franchise area for the franchisee, while the franchisor commits to pay for the impact study (in most cases) and ultimately reject the new location if it will impact the existing location by over fifteen percent. The guidelines cannot be evidence of consideration by franchisee when they suggest no apparent benefit to KFC.

Franchisee does not have a cognizable claim for breach of contract based on the express terms of the parties' agreement. He alleges no breach of an explicit provision of the Franchise Agreement, and he has not alleged sufficient facts to suggest that the parties modified the contract to incorporate the guidelines. I therefore GRANT defendant's motion to dismiss the express breach of contract claim ("First Claim for Relief").

### B. <u>Breach of the covenant of good faith and fair dealing</u>

Franchisee's second claim is for "bad faith." ECF No. 17 at ¶¶25–27. Based on franchisee's response to the motion to dismiss, the Court interprets this as a claim for breach of the covenant of good faith and fair dealing. ECF No. 20 at 8. This too is technically a breach of contract claim but for breach of an implied covenant instead of an express term.

Every contract in Kentucky implies a covenant of good faith and fair dealing.  *Farmers Bank & Tr. Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)).  Under Kentucky law this covenant "impose[s] on the parties thereto a duty to do everything necessary to carry them out."  *St. Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 196 (6th Cir. 2015) (internal quotation marks and citations omitted).  It also "requires a party vested with contractual discretion to 'exercise that discretion reasonably and with proper motive, and [not] arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'"  *Time Warner Cable Midwest LLC v. Pennyrile Rural Elec. Coop. Corp.*, No. 5:15-CV-45-TBR, 2015 WL 4464105, at *4 (W.D. Ky. July 21, 2015) (quoting *Deom v. Walgreen Co.*, 591 Fed. Appx. 313, 317 (6th Cir. 2014)); *Clubspecialists Int'l LLC v. Keeneland Ass'n, Inc.*, No. 5:16-CV-345-KKC, 2017 WL 522945, at *5 (E.D. Ky. Feb. 8, 2017) (noting that a party's discretion to exercise its contract rights "is not unbridled, but is circumscribed by the implied covenant of good faith and fair dealing.").

"The covenant of good faith is an obligation owed by both parties, and breach of this covenant can be the basis of a viable breach of contract claim."  *Hargis*, 785 F.3d at 196.  However, "violation of the good faith covenant alone does not give rise to an independent cause of action."  *J.S. v. Berla*, 456 S.W.3d 19, 25 (Ky. Ct. App. 2015); *see also Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 634 (E.D. Ky. 2012), *aff'd sub nom. Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434 (6th Cir. 2014) (noting exception in insurance context).  Applying Kentucky law the Sixth Circuit has explained

> In order to show a violation of the implied covenant of good faith and fair dealing, a
> showing of breach of contract is ordinarily not required; rather, the party asserting the

> violation must 'provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'

*O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 457–58 (6th Cir. 2005) (quoting 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 2004)); *see also KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 461 (6th Cir. 2019).  Moreover, the covenant "does not prevent a party from exercising its contractual rights."  *Farmers Bank*, 171 S.W.3d at 11 (citing *Hunt Enterprises, Inc. v. John Deere Indus. Equipment, Co.*, 162 F.3d 1161, 1998 WL 552795 (6th Cir. 1998)).

Franchisee argues that KFC breached the covenant of good faith and fair dealing by exercising its discretion unreasonably with respect to new franchise locations.  ECF No. 20 at 10.  According to franchisee, KFC had discretion under the contract regarding outlets beyond the one and one-half mile radius from franchisee's outlets.  KFC then "set its *own* bar" for reasonable non-encroachment by creating and following the guidelines.  *Id.* at 11 (emphasis in original).

KFC makes four arguments for why franchisee does not allege a valid claim for breach of the covenant of good faith and fair dealing.  First, KFC contends that Kentucky does not recognize a "standalone claim" for breach of the covenant separate from a legitimate breach of contract claim.  ECF No. 18 at 8.  Because franchisee does not articulate a well-pled breach of contract claim, KFC argues, his breach of the implied covenant claim also cannot be sustained.

The Court disagrees with KFC's interpretation of the law.  Decisions addressing this issue have typically specified that breach of the implied covenant does not create an independent *tort* claim.  *E.g. Berla*, 456 S.W.3d at 25–26.; *Crestwood Farm*, 864 F. Supp. 2d at 634; *Ennes v. H & R Block E. Tax Servs., Inc.*, No. CIV.A.3:01CV-447-H, 2002 WL 226345, at *2 (W.D. Ky.

Jan. 11, 2002).  Breach of the implied covenant can give rise, however, to a *contract* claim if the breach denies a party a benefit of their bargain under the contract.  *Burns*, 147 F. App'x at 457–58.  Here franchisee alleges a claim in contract, not in tort.  ECF No. 20 at 10 ("Franchisee seeks to enforce KFC's obligation to comply in good faith with the express terms of the Parties' Agreement pursuant to KFC's own written Guidelines and the implied covenant of good faith and fair dealing arising from those express terms.").  To the extent some decisions suggest there can be no breach of the covenant without breach of an express contract term, *Advancmed, LLC v. Pitney Bowes Credit Corp.*, No. CIV.A. 05-464-JBC, 2006 WL 1007467, at *3–4 (E.D. Ky. Apr. 17, 2006), KFC itself acknowledges a case that suggests the opposite.  *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 718 (Ky. Ct. App. 2016); *see also Burns*, 147 F. App'x at 457–58.

Second, KFC argues that existing case law forecloses reading the implied covenant to prevent franchise encroachment.  KFC cites to various cases that found the opening of additional franchises did not violate the covenant when a franchisee's territory was expressly delineated in the contract.  These decisions do not apply Kentucky law and are not binding on this Court.  Moreover, they are distinguishable from the case here.

KFC points first to *Schulenburg*, in which the agreement between the parties "assigned" franchisee a "three-mile radius."  *Handel's Enterprises, Inc. v. Schulenburg*, No. 4:18-CV-00508, 2020 WL 419158, at *1 (N.D. Ohio Jan. 27, 2020).  The court found there was no breach of the covenant when franchisor opened additional locations outside the three-mile radius because franchisor did not intrude on franchisee's territory.  *Id.* at *12.  Similarly, in *Cook* the parties had a franchise agreement that provided plaintiff with a limited "one-mile exclusive

territory." *Cook v. Little Caesar Enters., Inc.*, 972 F. Supp. 400, 409 (E.D. Mich. 1997), *aff'd*, 210 F.3d 653 (6th Cir. 2000). The court held that the "implied covenant of good faith and fair dealing cannot be employed to override that express term." *Id.* Finally, in *Barnes* a local Burger King sales and service manager gave franchisee a letter stating the company had a "good faith" policy of generally not allowing new locations within two miles of an existing franchise. *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1423 (S.D. Fla. 1996). The court found no claim for breach of the implied covenant in part because the contract the franchisee signed after receiving this letter expressly stated that the franchisor could open new locations wherever it wanted. *Id.* at 1434.

The case before this Court differs in important ways from KFC's authorities. In *Barnes* the formal contract explicitly contradicted the letter committing Burger King to a two-mile radius. The letter also came *before* the contract and was thus properly excluded by a merger and integration clause. *Id.* at 1423–24. Here, the guidelines and contract are not directly contradictory, and the guidelines came *after* the contract. The contract provisions in *Schulenburg* and *Cook* expressly delineated the territory for the franchisee by reference to the franchisee. The provision at issue here, by contrast, restricts KFC—the franchisor—from operating or licensing new franchises within the one and one-half mile radius. ECF No. 17-1 at § 3.6 In addition, all three decisions KFC cites were orders issued after discovery, either at the summary judgment stage (*Cook*, *Barnes*) or on a motion for preliminary injunction (*Schulenburg*). Finally and most notably, none of those cases involved the franchisor proactively issuing a policy that purported to constrain its own actions with respect to new franchises outside the exclusivity zone, as is the case here.

14

KFC is correct that most courts have been friendlier to franchisors than franchisees on this encroachment issue.  ECF No. 18 at 9; ECF No. 22 at 3.  But there are also courts that have come out the other way.  *E.g. In re Vylene Enterprises, Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 1996) (franchisee could expect that franchisor would "not act to destroy the right of the franchisee to enjoy the fruits of the contract"); *Legend Autorama, Ltd. v. Audi of Am., Inc.*, 100 A.D.3d 714, 716 (N.Y. 2012) (citations omitted) (while car company could add new franchises, "even an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement."); *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1403–04 (11th Cir. 1998) (when the parties' contract had no exclusivity provision, issue of whether defendant violated the implied covenant by licensing new franchises close to plaintiff's location was a question of fact for the jury).  The case for franchisees becomes stronger where there is discretion at issue in the contract.  For example, the Second Circuit held in one case that "even if [the franchisor] acted within the bounds of its discretion, [it] would be in breach if it acted unreasonably."  *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 232 (2d Cir. 1991).

Discretion is at issue here, which brings me to KFC's third argument—that the implied covenant of good faith and fair dealing cannot prevent a party from exercising its contractual rights or change how rights are contractually allocated.  ECF No. 18 at 8 (citing *Back v. Nestle USA, Inc.*, No. CIV.A. 5:08-290-JMH, 2008 WL 4399492, at *2 (E.D. Ky. Sept. 23, 2008); *KSA*, 761 F. App'x at 461).  KFC argues that the Franchise Agreement is unambiguous, and that its "plain terms" allow KFC to license new outlets anywhere it wants beyond the one and one-half

mile zone.  ECF No. 18 at 9; ECF No. 22 at 2.  According to KFC, the contract terms constrain its right to license within the zone referenced in section 3.6 but otherwise impose no constraints on KFC whatsoever.

I cannot agree.  The language of section 3.6 states only that "KFC shall not use or license others to use any of the trademarks licensed hereunder . . . at any location within a radius of one and one-half miles of [franchisee's] Outlet."  ECF No. 17-1 at § 3.6.  Unlike in *Barnes*, there is no provision in the Franchise Agreement explicitly reserving to KFC the unfettered right to do whatever it wishes regarding other outlets beyond this radius.  Instead the contract is silent with respect to any activity outside that one and one-half mile zone.  KFC implicitly urges the Court to read that silence in its favor instead of franchisee's.  KFC undoubtedly has discretion to license additional restaurants—to find otherwise would lead to an absurd result that extended franchisee's exclusive territory indefinitely.  But the covenant of good faith and fair dealing requires that KFC exercise that discretion reasonably and not inconsistently with the parties' reasonable expectations.  *Deom*, 591 F. App'x. at 317.

Here, KFC unilaterally issued guidelines that outlined what would happen when KFC was considering a new outlet within ten miles of an existing one.  In doing so KFC communicated what a reasonable exercise of its discretion looked like.  It also generated reasonable expectations among its franchisees that KFC would follow the guidelines.  Had KFC not issued these guidelines the situation might be different.  But it did.  The Court will not, as franchisee fears, interpret the guidelines as meaningless.  ECF No. 20 at 11.  It was reasonable for franchisee to expect KFC to abide by the guidelines in good faith when proposing new outlets within ten miles of franchisee's existing outlet.

16

KFC's fourth and final argument is that franchisee cannot establish a breach of the implied covenant because KFC *did* in fact follow the guidelines.  KFC asserts that franchisee's disagreement with the methodology behind the impact study cannot support his claim, and that franchisee's allegations of "bad faith" are purely conclusory.  ECF No. 18 at 10.  Franchisee does not dispute that KFC undertook an impact study.  ECF No. 17 at ¶14.  What franchisee alleges is that the study was, in effect, bogus—that its approach was so fundamentally flawed and inaccurate that its results could not reasonably be used to justify a new outlet in the area. Franchisee supports these allegations with reference to his own study reporting an impact nearly three times as large as the result KFC's study predicted.  *Id.* at ¶15–17.  Franchisee also points to what it believes is a critical question for predicting impact that KFC's study failed to ask.  *Id.*

Franchisee has alleged sufficient facts to suggest that KFC treated its guidelines as a perfunctory box-checking process instead of truly assessing the impact a new outlet would have on franchisee.  The issue is not whether KFC nominally followed its own guidelines.  It is whether KFC acted reasonably in exercising its discretion to locate a new outlet near the existing one.  Franchisee has sufficiently pled a breach of the covenant of good faith and fair dealing implied in its contract with KFC.  I therefore DENY defendant's motion to dismiss this claim ("Second Claim for Relief").

### C. **Promissory estoppel and unjust enrichment**

Franchisee's third and fourth claims are for promissory estoppel and unjust enrichment. ECF No. 17 at ¶¶29–32, 34–35.  For promissory estoppel he argues that if the guidelines are not deemed to be part of the parties' Franchise Agreement, then they amount to a promise on which he reasonably relied.  ECF No. 20 at 12.  As to unjust enrichment, franchisee argues that KFC

will unjustly benefit from a new outlet improperly approved at franchisee's loss.  ECF No. 17 at

¶¶34–35; ECF No. 20 at 14.

Promissory estoppel is a quasi-contract claim permitting recovery in the absence of an

enforceable contract.  In Kentucky this doctrine applies to gratuitous promises where detrimental

reliance is a substitute for consideration.  *McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10,

12 (Ky. Ct. App. 1990).  It is "not designed to give a party . . . a second bite at the apple in the

event it fails to prove breach of contract."  *Bus. Payment Sys., LLC v. Nat'l Processing Co.*, No.

3:10-CV-00669, 2012 WL 6020400, at \*16 (W.D. Ky. Dec. 3, 2012) (quoting *Gen. Aviation, Inc.

v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990)).  Courts applying Kentucky law

dismiss claims for promissory estoppel that are based on the same performance contemplated by

a contract.  *Shane*, 200 F. App'x at 403; *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.*,

898 F. Supp. 1198, 1205 (W.D. Ky. 1995).  Thus, if there is an enforceable contract addressing

the issue that underlies the dispute—i.e. the alleged promise—promissory estoppel does not

apply.  *Shane*, 200 F. App'x at 403–04.

Unjust enrichment "is not based upon a contract but a legal fiction invented to permit

recovery where the law of natural justice says there should be a recovery as if promises were

made."  *Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky. Ct. App. 1987).  Similar to promissory

estoppel, Kentucky law prohibits recovery for unjust enrichment when the parties' dispute is

over an explicit contract.  *Graves v. Standard Ins. Co.*, No. 3:14-CV-00558-CRS, 2016 WL

4445479, at \*2 (W.D. Ky. Aug. 19, 2016).  "The doctrine of unjust enrichment has no

application in a situation where there is an explicit contract which has been performed."  *Codell

Const. Co. v. Com.*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977).  Kentucky courts have

consistently affirmed the *Codell* principle, barring unjust enrichment claims in the presence of written or oral agreements. *Ham Broad. Co., Inc. v. Cumulus Media, Inc.*, No. 5:10-CV-00185-R, 2011 WL 13232371, at *4 (W.D. Ky. Oct. 17, 2011) (collecting cases). Courts typically only entertain alternative pleadings of unjust enrichment and breach of contract when the existence of a valid and enforceable contract is in dispute. *E.g. Knight v. Stewart Title Guar. Co*, No. CIV.A. 07-87-DLB, 2014 WL 4986676, at *10 (E.D. Ky. Oct. 6, 2014); *Holley Performance Prod., Inc. v. Keystone Auto. Operations, Inc.*, No. 1:09-CV-00053-TBR, 2009 WL 3613735, at *6 (W.D. Ky. Oct. 29, 2009).

Here the parties do not dispute that the Franchise Agreement, including provision 3.6, is valid and enforceable. ECF Nos. 17, 18, 20, 22. Instead the parties dispute the relevance and binding nature of the guidelines. The Court has determined that the guidelines reveal KFC's understanding of its discretion in licensing new outlets beyond the one and one-half mile zone. The Court has also found that franchisee has sufficiently pled a breach of contract claim in the form of a breach of the implied covenant of good faith and fair dealing. Franchisee himself states that his quasi-contract claims are "in the alternative" and based on "the absence of a relevant contractual provision." ECF No. 20 at 13–14. Given the Court's prior findings, franchisee cannot proceed on both his quasi-contract claims and his breach of contract claim. I therefore GRANT defendant's motion to dismiss the claims for promissory estoppel ("Third Claim for Relief") and unjust enrichment ("Fourth Claim for Relief").

### D. **Permanent injunction**

Franchisee also seeks a permanent injunction. ECF No. 17 at ¶¶37–40. The parties agree that franchisee's request for a permanent injunction is derivative of his other claims for relief.

ECF No. 18 at 11; ECF No. 20 at 14.  KFC is correct that an injunction is not a cause of action but a remedy.  *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014).  However, the Court will not take KFC's invitation to dismiss this "claim" simply because franchisee incorrectly labeled it.  The *Thompson* court read plaintiff's complaint as requesting injunctive relief for an alleged breach of a statute.  I similarly read franchisee's complaint here as requesting injunctive relief.  Franchisee makes clear in his amended complaint that he wants this Court to enjoin the outlet from being licensed or operated in order to prevent him from suffering harm.  ECF No. 17 at ¶37.  Dismissal of this request would be appropriate if I were dismissing all of franchisee's claims for relief.  I am not.  I therefore DENY defendant's motion to dismiss the request for permanent injunction.

## ORDER

The Court DENIES in part and GRANTS in part defendant's motion [ECF No. 18] as follows:

1. The motion to dismiss the express breach of contract claim is GRANTED.

2. The motion to dismiss the breach of covenant of good faith and fair dealing is DENIED.

3. The motion to dismiss the promissory estoppel claim is GRANTED.

4. The motion to dismiss the unjust enrichment claim is GRANTED.

5. The motion to dismiss the request for permanent injunction is DENIED.

DATED this 12th day of November, 2020.

BY THE COURT:

R. Brooke Jackson
United States District Judge